IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Roberto Mendoza as Guardian *ad Litem for* John Doe who is a minor child,<br><br>Plaintiff,<br><br>v.<br><br>Beaufort County School District, Ryan Milling, Joseph Hollington and Shandequa M. Jenkins,<br><br>Defendant. | 9:24-cv-02332-DCN<br><br><br>**COMPLAINT**<br>*(JURY TRIAL DEMANDED)* |

### NATURE OF THE ACTION

This case is about the use of corporal punishment in a school setting on one of society's most vulnerable citizens, a young non-verbal, autistic child at the hands of the Defendants charged with responsibility for his care and education. Defendant Jenkins, a teacher's assistant in a special-needs classroom at H.E. McCracken Middle School, knowingly, improperly, and with deliberate indifference to John Doe's constitutional rights, seized the mentally disabled child and forcibly struck him on the hands and arms with a blunt object. John Doe sustained physical injuries and psychological harm as a proximate result of Defendant's actions. Based on previous complaints about Jenkins, the school's Principal, Ryan Milling, and Assistant Principal, Joseph Hollington, knew or should have known that Jenkins posed a danger to students, and this was not an isolated incident. Instead of reporting the previous incidents at McCracken, as mandated by South Carolina law, Defendants Milling and Hollington allowed Jenkins to remain a teacher's assistant in the only

special education class appropriate for John Doe as determined by his individual education plan team. Defendant, Beaufort County School District knew, or should have known, that Jenkins posed a threat to students based on previous complaints about Jenkins dating to 2019 when she allegedly used corporal punishment on another student at M.C. Riley Elementary School. Defendants allowed Jenkins to remain employed as a teacher's assistant in special-needs classrooms and, in doing so, essentially instituted, permitted, endorsed, encouraged, facilitated and condoned Jenkins' use of corporal punishment on John Doe. Defendants violated the rights of John Doe under the Constitution of the United States of America in multiple respects.

## THE PARTIES

1. Plaintiff Roberto Mendoza and Mical A. Salazar Reyna (the "Parents") are the parents and legal guardians of John Doe ("Plaintiff"), a minor child under the age of fourteen. Plaintiffs are citizens of the United States and residents of the State of South Carolina. At all times pertinent to this action, John Doe was entitled to receive full and equal access to the public education programs and activities offered with Beaufort County School District.

2. At the time of the events underlying these causes of action, John Doe was a special education student entrusted to the care of Defendants Beaufort County School District, Ryan Milling, Joseph Hollington and Shandequa Jenkins.

3. Defendant Beaufort County School District ("BCSD") is an agency, political subdivision and/or government entity within the meaning of the South Carolina Tort Claims Act (S.C. Code Ann. § 15-78-10, et seq.), operating in the County of Beaufort, State of South Carolina and at all relevant times was responsible for the actions of its agents, staff, personnel, and employees; and said agents, staff, personnel, and employees were acting within the course and scope of their employment, relationship with Defendant and under color of law.

4. Defendant BCSD is responsible for providing special education services in Beaufort County, South Carolina. It is also responsible for ensuring that the individuals supervising and administering these programs knew, understood and followed the laws and policies governing the treatment of its students including, and most importantly, those with special needs. During the present action, Defendant BCSD controlled and maintained HE McCracken Middle School, a school within Beaufort County, South Carolina. Moreover, Defendant BCSD is and was responsible for the training, discipline and supervision of teachers, aides, therapists, and other education personnel at HE McCracken Middle. Accordingly, Defendant BCSD is liable for the conduct of Ryan Milling, Joseph Hollington and Shandequa Jenkins as described more fully herein via the doctrine of *respondeat superior*, by statute and/or other legal avenues.

5. Upon information and belief, Defendant Ryan Milling is an individual and resident of Beaufort County, South Carolina. At all material times herein, Defendant Milling was employed by Defendant BCSD as Principal of HE McCracken Middle School in Bluffton, South Carolina. Milling was responsible for supervising school personnel including recommending the hiring or firing of teachers in his school, carrying out the policies of the board, and ensuring compliance with both state and federal laws.

6. Upon information and belief, Defendant Joseph Hollington is an individual and resident of Beaufort County, South Carolina. At all material times herein, Defendant Hollington was employed by Defendant BCSD as Assistant Principal of HE McCracken Middle School in Bluffton, South Carolina. Hollington was responsible for supervising school personnel including recommending the hiring or firing of teachers in his school, carrying out the policies of the board, and ensuring compliance with both state and federal laws.

7. Upon information and belief, Defendant Shandequa M. Jenkins ("Jenkins") is an individual and resident of South Carolina. At all material times herein, Defendant Jenkins was employed by Defendant BCSD as a paraprofessional, and was further empowered to instruct, supervise, assist and provide therapy services to students at HE McCracken Middle School, including John Doe.

8. Each Defendant is responsible in some manner for the actions, custom, policies, and/or practices herein alleged and/or is necessary party for obtaining appropriate relief. In performing each of the acts alleged in this Complaint and in omitting to do those acts that are alleged in this Complaint, each Defendant acted as an agent for each and all other Defendants. The injuries inflicted upon John Doe occurred because of the actions and omissions of each and all Defendants.

9. Defendants' conduct violated clearly established statutory and constitutional rights of which a reasonable person would have known.

## JURISDICTION

10. Jurisdiction is based on the existence of a federal question pursuant to 28 U.S.C. § 1331. This action arises under the United States Constitution and the laws of the United States, and is brought pursuant to 42 U.S.C. § 1983, 29 U.S.C. §794(a), and 42 U.S.C. § 12132, etc.

11. Jurisdiction is also proper under 28 U.S.C. § 1343(A)(3), which provides that district courts have original jurisdiction over claims "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

12. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court, Beaufort Division, as this is the district where Defendants reside and "a substantial part of the events or omissions giving rise to the claim occurred[.]"

## FACTS

13. Plaintiff reiterates and realleges the preceding paragraphs as if fully set forth herein.

14. The use of physical force and/or violence as a corporal punishment or to enforce compliance has been found to be so extremely detrimental to the mental and physical health of disabled children that it has been prohibited by every level of state and federal government having authority over special education, including the State of South Carolina and the South Carolina Department of Education.

15. John Doe was a student in the Beaufort County School District and was identified as a special education student at a very early age. John Doe has autism and is non-verbal.

16. Because of John Doe's developmental disabilities, he received various special education services while at HE McCracken Middle School.

17. At all times relevant herein, John Doe was placed in a special-needs classroom, wherein Defendant Jenkins served as a paraprofessional or "teacher's assistant".

18. Unbeknownst to the Plaintiff, another parent had previously reported that Jenkins used corporal punishment on her disabled daughter at M.C. Riley Elementary School in 2019. Specifically, that parent had previously met with the principal at M.C. Riley and alleged that Jenkins forcibly removed finger-nail polish from the autistic student's hands as punishment for misbehavior. At that point, BCSD knew or should have known that Jenkins posed a threat to students but took no disciplinary action against Jenkins and/or allowed Jenkins to remain employed which caused various damages and deprivations to John Doe as detailed herein below.

19. When John Doe was delivered to HE McCracken Middle School on January 10, 2023, he did not have bruises or any other injuries.

20. During the school day on January 10, 2023, Defendant Jenkins threatened John Doe with a wooden ruler, physically seized and struck him, such that he suffered *severe* physical and emotional damages, including but not limited to excessive bruising, extreme fear and significant developmental regression. For example, John Doe now exhibits severe emotional outbursts that make his behavior difficult to manage. John Doe flinches when touched by an adult and raises his arms and fists as if he is expecting to be hit.

21. Having personal knowledge of John Doe's developmental disabilities and given her superior size and strength in comparison to John Doe, Defendant Jenkins knew or should have known that her conduct would cause John Doe severe mental anguish, psychological harm and physical suffering. Upon information and belief, John Doe's injuries are made more severe and long-lasting by his underlying autistic disability. Defendants knew, or should have known, that a disabled child is more vulnerable than a normal one.

22. Plaintiff suspected prior abuse at school but, until now, were unable to determine the source and cause of the injuries.

23. When John Doe returned home from school, his parents discovered distinct scratches and bruises on his arms and hands then contacted Jenkins to ask about the injuries. Jenkins denied any wrongdoing and said John Doe had been injured by a table in the school's cafeteria.

24. However, Hannah Patterson, a schoolteacher from the same classroom as Jenkins, personally witnessed Jenkins physically strike John Doe and reported it the next day, January 11, 2023, to school officials. Specifically, Patterson said that Jenkins beat John Doe with a ruler which

caused physical injuries to his hands. Patterson had *previously* reported Jenkins to Defendants Milling and Hollington after another student alleged physical abuse by Jenkins, but nothing was done. Accordingly, Defendants Milling and Hollington were responsible for retaining Jenkins despite the previous reports of her abusive conduct.

> 23BP02115
>
> 1/11/23 - Hanna Patterson
>
> Dedee & Dylan were sitting next to each other working. Dylan attempted to get up. Dedee used a ruler and hit Dylan across the top of his hands two times. There are visible marks on the top of his hands.

25. The following morning on January 12, 2023, at 8:53 a.m., Hannah Patterson emailed the school principal, Defendant Ryan Milling, and vice-principal Joseph Hollington, to advise that John Doe's parents had messaged her with photos of John Doe' injuries. Still, Milling and Hollington kept quiet about Jenkin's use of corporal punishment on John doe and other students.

> From: Patterson, Hanna E
> Sent: Thursday, January 12, 2023 8:53 AM
> To: Milling, Ryan Q; Hollington, Joseph C
> Subject: Messages from mom
> Attachments: DMS1.jpg; DMS2.jpg; DMS3.jpg
>
> Good morning!
>
> Just FYI and keeping you in the loop - Dylan's mom messaged me last night on Seesaw with concerns and pictures. I did not see them until I just logged into my laptop. I am attaching to this email.
>
> > Dylan came home yesterday with these scratches on his hands, to noticeable than yesterday, the person who gave it to me aller said cafeteria table but these are scratches and bruises everything is f because this can't be happening I already took pictures of his han when he left my house what can you tell him about it
> > Yesterday at 7:26 PM  View Original  (Spanish, Translated by Google)
>
> *Hanna Patterson*
> SPECIAL EDUCATION TEACHER
> HE McCRACKEN MIDDLE SCHOOL

26. Later that same day, January 12, 2023, John Doe's parents met with Principal Ryan Milling and Assistant Principal Dr. Joseph Hollington but they did not mention that Holly Patterson had personally witnessed Jenkins attack John Doe and reported it. Instead, Milling and Hollington pretended as if they were completely unaware of the attack. According to the meeting minutes, Milling asked the parents if they had "some sense of where the [bruises] came from" and "if they know who it is" when clearly, they already knew that Jenkins had physically abused John Doe. When the parents advised that they intended to file a police report, Milling responded that the "school would handle it at a personnel level." Patterson, who was present at the meeting, physically gestured to the parents that they should "zipper" their mouths.

27. John Doe's parents then filed a police report with Bluffton Police Department detailing the injuries to John Doe at school.

28. On January 17, 2023, John Doe's parents *again* met with school officials including Defendant Milling, Defendant Hollington and Patterson who, for a second time, concealed their

knowledge that Jenkins had attacked John Doe and that there had been previous reports of abuse. Instead, they told the parents that the matter was being handled "internally".

29. Email records show that Defendant Milling and Defendant Hollington concealed Patterson's report and did not inform school district officials of the attack until they were confronted by law enforcement on January 31, 2023. Matthew D. Hunt, the BCSD's Director of Human Resources, later wrote on February 23, 2023:

> Dear Attorney Cartledge:
>
> Included in this memo is the timeline of events from the point in which I became involved regarding the aforementioned case number and former employee Shandequa Jenkins (employee # ▓▓▓).
>
> - On the afternoon of January 31, 2023, I became aware of the situation when I received notification from Ryan Milling, Principal, H.E. McCracken Middle School, regarding investigators questioning employees about an incident that happened involving Jenkins. Milling provided me with background information on the incident and I directed him to send me any documentation that he had relative to the incident. Milling also stated that he changed the placement of the employee so that Jenkins would no longer be around the student.

30. On January 31, 2023, Detective Luechtefeld from Bluffton Police Department interviewed Hannah Patterson. Detective Luechtefeld's report states:

> INTERVIEW WITH TEACHER, HANNAH PATTERSON: (770)402-7458:
>
> On 1/31/2023 I met with Patterson, who is the Head Teacher over the classroom that the suspect, Jenkins, had been working in at the time of the incident. Patterson advised that Jenkins started at HE McCracken Middle approximately 2 years ago. I inquired with Patterson about Jenkins actions toward the juvenile victim, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ to which she responded that on 1/11/2023 she wrote a written statement and turned it into school administrators because she witnessed Jenkins strike ▓▓▓ on the top of his hands 2 times in a row. Patterson added that she had left the classroom and was returning when she saw this occur. Patterson advised that ▓▓▓ was trying to close his computer and get up when he was assaulted by Jenkins. I inquired with Patterson if Jenkins has ever done anything like this before, to which she responded that in the past another student had told her that Jenkins was pinching the other student. Patterson added that she had also reported that incident. Patterson added that it is not unusual for Jenkins to be left in a room alone with ▓▓▓. I asked Patterson about the meeting on 1/12/2023 that she was involved with where ▓▓▓▓▓▓ came in. Patterson advised that at no point did anyone advise ▓▓▓ to not contact law enforcement. Patterson added that she did not bring up the ruler incident with ▓▓▓▓▓▓ because she was unsure how much she was supposed to tell them. Patterson also advised that Jenkins is also known as "DeeDee". Patterson later provided me with a written statement of what she observed.

31. Detective Luechtefeld also interviewed Defendant Milling on January 31, 2023. Milling acknowledged receiving Hannah Patterson's report on January 11, 2023, and even provided a copy of Patterson's report to Detective Luechtefeld during the interview. When asked what the school's protocol is for reporting incidents to law enforcement, Milling was unable to explain why he concealed Patterson's report and responded only that he had "turned [it] over to HR Department for investigation". Milling did not mention that he had reported the abuse to HR just hours earlier despite knowing about it for weeks. Detective Luechtefeld's report states:

> INTERVIEW WITH H.E. MC CRACKEN PRINCIPAL, RYAN MILLING:
>
> On 1/31/2023 I met with Principal Milling who advised that he was made aware of the incident and was present for the meeting on 1/12/2023 via telephone. Milling added that the incident had been turned over to the HR Department for investigation. I requested the copy of the statement that Patterson had provided me, which Milling provided willingly. Milling added that he also met with ███████ ███████ Dr Hollington and Mrs. Patterson on 1/17/2023 in person. Ms. Ryan was utilized as a translator for the meeting. I inquired with Milling as to the protocol for reporting incidents to law enforcement, which he responded that if a teacher was fighting a student, it would be reported.

32. Upon information and belief, Defendant Milling, Defendant Hollington and BCSD made no formal record of Jenkins' previous transgressions or, in the alternative, omitted the information from official school records. In this respect, Milling, Hollington and BCSD remained passive while Jenkins abused John Doe and instituted, permitted, endorsed, encouraged and facilitated the beatings on John Doe in this case. Milling, Hollington and BCSD were responsible for retaining Jenkins after they had knowledge that she previously used corporal punishment on disabled students.

33. Defendant Jenkins' retention as a teacher's assistant was the conduct undertaken specifically by BCSD, Milling and Hollington which subjected John Doe to Jenkins who they knew, or should have known, posed a dangerous threat.

34. The evidence, viewed as a whole, shows multiple instances where BCSD, Milling and Hollington disregarded, concealed and/or ignored Jenkins' use of corporal punishment on disabled students.

### FIRST CAUSE OF ACTION
**Fourteenth Amendment- Violation of Constitutional Right to Substantive Due Process (42 U.S.C. § 1983 –As to All Defendants)**

35. Plaintiff reiterates and realleges the preceding paragraphs as if fully set forth herein.

36. The Supreme Court has found that "where school authorities, acting under the color of state law, deliberately decide to punish a child for misconduct by restraining the child and inflicting appreciable physical pain…the Fourteenth Amendment liberty interests are implicated." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

37. Plaintiff has a clearly established liberty interest and constitutional right under the Fourteenth Amendment of the United States Constitution to be free from unnecessary and unreasonable force, violations of his bodily integrity, or intentional, reckless or deliberately indifferent or oppressive conduct that causes emotional or psychological harm.

38. Plaintiff has a clearly established substantive due process right to be free from the infliction of malicious corporal punishment by school officials.

39. Defendant Jenkins deprived John Doe of his liberty interest, right to be free of violations of his bodily integrity, right to be free from excessive and unnecessary force by physically abusing John Doe.

40. The force applied by Defendant Jenkins was severe given the injuries and extensive bruising on John Doe's body. Defendant Jenkins' use of force on Plaintiff was completely disproportionate to any disciplinary needs. Moreover, Defendant Jenkins deliberately and intentionally instituted unprovoked beatings on Plaintiff that were inspired by malice. Jenkins'

use of physical violence and restraint upon a disabled child rose to the level of malicious severity and entitled John Doe to relief pursuant to 42 U.S.C. §1983.

41. Despite being motivated in some part by disciplinary purposes, Jenkins' actions were enormously disproportionate to any disciplinary need. Jenkins' actions were malicious and inhumane especially considering the size difference between the small disabled John Doe and the much larger and non-disabled Jenkins. Equally as shocking is the emotional injury that was inflicted on a disabled child would was unable to speak. Jenkins was well aware of John Doe's disabilities and that he would be unable to report her use of corporal punishment. Jenkins' attack left John Doe so fearful that he flinches and puts his arms up when confronted by an adult. These facts would shock the conscience of any reasonable person.

42. Using corporal punishment on a severely, non-verbal autistic child in the school-setting shocks the conscience under any circumstances and for any reason.

43. No reasonable educator could have believed that repeatedly instituting the unprovoked and painful corporal punishment of one of his students was lawful in light of clearly established law.

44. South Carolina law requires that certain professionals report known or suspected cases of child abuse or neglect, because they have unique opportunities to observe and interact with children. Educational professionals, including Milling and Hollington, are included.

45. Mandated reporters must report abuse or neglect when, in their professional capacity, they receive information giving them reason to believe that a child's physical or mental health has been, or may be, adversely affected by abuse or neglect. A decision to report must be based upon a reasonable belief that a child has been, or may be, abused or neglected. Thus,

mandatory reporters need not have conclusive proof that a child has been abused or neglected prior to reporting abuse or neglect to the proper authorities.

46. When the alleged perpetrator of the abuse or neglect is not the child's parents or legal guardian, the law requires that a report be made to law enforcement including, but not limited to, the school resource officer ("SRO").

47. Here, Milling and Holling knew that John Doe was physically abused by Jenkins, and/or may be physically abused by Jenkins, yet ignored South Carolina's mandated reporting requirements.

48. Even worse, evidence clearly shows that it was the *practice* of Defendants BCSD, Milling and Hollington, both before and after the attack on John Doe, to repeatedly disregard and/or conceal warnings and complaints about Jenkins when they knew, or should have known, that Jenkins posed a threat. As documents show, defendants' total disregard for the safety of disabled students was not a single alleged act. As such, Defendants' written policies, procedures and protocols provide no legal shelter because their *actual practice* was to ignore state-mandated reporting requirements on multiple occasions which caused John Doe to be exposed to Jenkins who they knew was prone to use corporate punishment on disabled students. This practice was undertaken specifically by Defendants to conceal the conduct of Jenkins, to avoid reputational harm, and to deprive John Doe of his constitutional rights.

49. The fact that Jenkins' physical abuse upon John Doe was not administered pursuant to an established procedure, but instead an arbitrary practice for no legitimate disciplinary purpose, makes it more likely that the conduct of all Defendants constitutes a malicious abuse of power in violation of the Due Process Clause.

50. Supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by the subordinates. In this instance, supervisory liability is not premised on *respondeat superior* but upon a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.

51. In this case, supervisory liability ultimately is determined by pinpointing the persons in the decision-making chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.

52. Here, the record shows that Defendants BCSD, Milling and Hollington had actual knowledge that Jenkins had, improperly and illegally, used corporal punishment on disabled students on several difference occasions. This is especially evident from Hannah Patterson's previous reports that Jenkins had physically hit, punched and/or scratched other disabled students along with a previous parent's complaint about Jenkins' use of corporal punishment on a disabled student punishment in 2019. Defendants had knowledge that Jenkins posed a pervasive and unreasonable risk of constitutional injury to students like John Doe.

53. The response of Defendants BCSD, Milling and Hollington to the aforementioned knowledge was so inadequate as to show deliberate indifference to or tacit authorization of Jenkins' abusive practices. Defendants took no action to discipline or terminate Jenkins in the face of documented previous abuses even though they had a basis upon which to anticipate that Jenkins would use corporal punishment on John Doe.

54. Defendants BCSD, Milling and Hollington, who are indisputably state actors, not only failed to come to the defense or protect John Doe from harm inflicted by Jenkins, but disregarded and/or concealed previous complaints and warnings about Jenkins' use of corporal

punishment on disabled students, Defendants essentially instituted, permitted, endorsed, encouraged, facilitated and implicitly authorized Jenkins' use of corporal punishment on John Doe. Defendants caused John Doe to be subjected to Jenkins' abuse. This, in itself, was a brutal and inhumane abuse of official power that would shock the conscience of any reasonable person.

55.     Jenkins' use of corporal punishment on John Doe and his resulting injuries were the foreseeable consequence of Defendant's failure to investigate, or even to address, Jenkins' conduct which posed a pervasive and unreasonable risk of constitutional injury to John Doe.

56.     All of the aforementioned acts/or omissions of Defendants were conducted within the scope of their official duties and employment and under the color of state law.

57.     As a direct and proximate result of the actions described above, John Doe sustained actual damages, including injuries to his person, pain, mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness and anxiety as well as future damages including fear, lack of trust, and increased risk of isolation from general society.

58.     The conduct of the Defendants described herein violated clearly established rights of John Doe which reasonable people in Defendants' position knew or should have known.

## SECOND CAUSE OF ACTION
### Violation of Section 504 of the Federal Rehabilitation Act (As to BCSD)

59.     Plaintiff reiterates and realleges the preceding paragraphs as if fully set forth herein.

60.     Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §794 ("Section 504"), and the regulations promulgated thereunder, 34 C.F.R. Part 104, prohibit discrimination against persons with disabilities. John Doe has multiple disabilities as alleged previously and is protected under Section 504.

61.     Section 504 prohibits the exclusion from the participation in, or being denied the benefits of, or being subjected to discrimination under, any program or activity receiving federal

financial assistance. Congressional authority to condition federal funding under this Act is derived from the enumerated powers contained in Article 1, Section 8 of the U.S. Constitution.

62. Beaufort County School District is a recipient of federal financial assistance.

63. The practices described above, including but not limited to, restraining and using corporal punishment on John Doe, were discriminatory and denied him the benefits of participation in a public-school education.

64. Students without disabilities were not subjected to the abuses that John Doe was subjected to and described herein. This difference in treatment was due, in whole or in part, to John Doe's disabilities, especially his inability to speak and report the abuse. Physical restraints or corporal punishment were not used for instructional or punitive purposes on students without disabilities. BCSD violated John Doe's rights under Section 504 and the regulations promulgated thereunder by denying him the benefits or receiving full and equal access to the public education programs and activities offered with the Beaufort County School District by failing to provide him with a free, appropriate education in an appropriate and safe placement.

65. BCSD actions were intentionally discriminatory and were taken with deliberate indifference to the strong likelihood that the actions would result in a violation of John Doe's federally protected rights.

66. As a direct and proximate result of BCSD's violation of Section 540, John Doe has suffered, continues to suffer, and will suffer in the future injuries to his person including, but not limited to, pain, humiliation, anxiety, mental anguish, emotional distress, and damage to his personal relations in amounts to be ascertained according to proof at trial.

### THIRD CAUSE OF ACTION
**(Violation of the Americans with Disabilities Act ("ADA"))(As to BCSD)**

67. Plaintiff reiterates and realleges the preceding paragraphs as if fully set forth herein.

68. Title II of the ADA, 42 U.S.C. §12131 *et seq.* and the regulations thereunder, 28 C.F.R. Part 35, governing state and local governmental entities, protects persons from discrimination on the basis of disability by public entities. John Doe has multiple disabilities as alleged previously and is a protected person under the ADA.

69. The ADA prohibits the exclusion from participation in, or being denied the benefits of the services, programs, or activities of the public entity, or being subjected to discrimination by such entity.

70. The discriminatory practices described herein excluded John Doe from participating in and receiving benefits of a public-school education.

71. BCSD's practices were intentionally discriminatory and exhibited a deliberate indifference to the strong likelihood that the pursuit of these practices would result in a violation of John Doe' federally protected rights.

72. BCSD violated John Doe's rights under the ADA and regulations promulgated thereunder, denying John Doe the benefits of services, programs and activities to which he was otherwise entitled to from BCSD. John Doe was mistreated in violation of the law as a direct result of his disabilities, and the manifestation of these disabilities.

73. Students without disabilities were not subjected to the abuses that John Doe was subjected to, as described herein, this difference in treatment was due, in whole or in part, to John Doe's status as a student with disabilities. Non-disabled students were not subjected to corporal punishment and restraint either for instructional or punitive purposes.

74. As a direct and proximate result of BCSD's violations of the ADA, John Doe has suffered and continued to suffer injuries to his person including, but not limited to, pain,

humiliation, anxiety, mental anguish, emotional distress, and damage to his personal relations in amounts to be ascertained according to proof at trial.

BAUER & METRO, PC

s/   Robert S. Metro_____
Robert S. Metro (#12680)
Rob@bauermetro.com
Samuel C. Bauer (#7508)
Sam@bauermetro.com
Post Office Box 7965
Hilton Head, SC 29938
(843) 842-5297


*ATTORNEYS FOR PLAINTIFFS*

April 23, 2024
Bluffton, SC